# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ROOSEVELT ROSE,

                             Plaintiff,

         vs.                                        9:16-CV-787
                                                (BKS/ATB)

ANTHONY J. ANNUCCI, et al.,

                             Defendants.

---

ROOSEVELT ROSE, Plaintiff pro se
JOHN F. MOORE, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In his civil rights complaint, plaintiff, a practicing Muslim, alleges that defendants violated his First Amendment right to practice his religion and his rights under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) by interfering with his observance of religious holidays in 2014, 2015, and 2016, while he was incarcerated at Franklin Correctional Facility ("Franklin"). (Dkt. No. 1, Compl. at CM/ECF pp. 5-9). Plaintiff seeks significant monetary relief. (Compl. at CM/ECF p. 11).

       Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 53). Plaintiff has responded in opposition to the motion. (Dkt. No. 59). Defendants replied, and plaintiff filed a surreply. (Dkt. Nos.

61, 67).  For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

### I.    <u>Facts and Contentions</u>

As required under Local Rule 7.1, defendants have filed a statement of material facts and notice to plaintiff of the requirement to file a response in accordance with the local rules.  (Dkt. No. 53-10, "Def. Statement of Material Facts").  Plaintiff filed a counter-statement of material facts, but did not respond in the manner required by Local Rule 7.1(a)(3). (Dkt. No. 59, "Pl.'s Statement of Material Facts").  Therefore, the court may accept the facts in defendants' statement as true to the extent that they are supported by evidence in the record.  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  However, in deference to plaintiff's pro se status, this court has opted to review the entire summary judgment record to determine the relevant facts.

Plaintiff was incarcerated at Franklin between January 17, 2014 and October 31, 2016. (Dkt. No. 53-10, "Def. Statement of Material Facts" ¶ 2).  In his complaint, plaintiff alleges that various officials violated his civil rights by interfering with his celebration of the religious holidays of Eid-Ul-Adha[1] and Ramadan by imposing unnecessary and discriminatory registration requirements. (Compl. at CM/ECF p. 5-10).  Plaintiff expanded on these allegations in a June 13, 2017 deposition. (Dkt. No. 53-1, at

---

[1] The pleadings include alternate spellings for this holiday of "Eidul Adha" and "Eid-Ul Adha." but this court will adopt the spelling used by plaintiff in his complaint. (Compl. at CM/ECF p. 5).  Despite the various spellings, all of the parties are referring to the same Muslim festival commemorating Abraham's willingness to obey God's command to sacrifice his son.

2

CM/ECF pp. 131-181, ("Dep.")[2]).

## A.    Eid-Ul-Adha Festival in 2014

In October 2014, the Muslim chaplain at Franklin retired, and the facility had not yet hired his replacement. (Dep. at 32).  On October 10, 2014, defendant Smith, a Protestant chaplain at Franklin, advised Muslim inmates, including plaintiff, that they would need to sign a "Religious Meal Form" in order to attend the Eid-Ul-Adha festival, to be held on October 18, 2014. (Dep. at 27).  Plaintiff was one of several inmates who refused to sign the form. (Dkt. No. 53-8, "Smith Decl." ¶¶ 2-3).

On October 15, 2014, defendant Wilder, a Catholic chaplain at Franklin who held the position of Facility Coordinating Chaplain, met with plaintiff individually. (Dkt. No. 53-7, "Wilder Decl." ¶ 2).  During this meeting, defendant Wilder explained that DOCCS policy required that any inmate who wished to participate in a religious meal was required to sign the Religious Meal Form. (*Id.*)  Because the Eid-Ul-Adha festival included a meal component, plaintiff was required to sign the form in order to attend. (Wilder Decl. ¶ 2).

Plaintiff again refused to sign the Religious Meal Form, and provided several reasons why he deemed the form incompatible with his Muslim faith. (Dep. at 33, 45). He noted that one version of the form referenced a "Kosher diet," and a different version of the form referenced a "Cold Alternative Diet."  (Dep. at 30, 80; Wilder Decl. Ex. F; Dkt. No. 53-1, at 91).  Neither of these diets was a mandatory part of his Muslim

---

[2] The deposition transcript is attached as Exhibit 17 to the September 29, 2017 Declaration of John F. Moore.  Subsequent references will be to the original pagination of the deposition transcript. (Dkt. No. 53-1).

faith. (Dep. at 80). In addition, plaintiff argued that DOCCS did not provide any regular "diet" for practicing Muslims, so there was no need for him to sign the form for a single festival, where much of the food was purchased with inmate funds. (Dep. at 46-48). At his deposition, plaintiff also insisted that DOCCS already had a list of Muslim inmates who would attend, and that the previous imam had not used the Religious Meal Form. (Dep. at 30-32).

Defendants contend that the Religious Meal Form was used for all faith groups, and that any inmate who refused to sign the form was prohibited from attending religious events that included a meal, regardless of their particular religious affiliation. (Wilder Decl. ¶ 4). This contention is consistent with the language of the form itself. Despite some potentially confusing references to Kosher meals and the Cold Alternative Diet, the forms submitted with the record herein are not limited to specific religious affiliations. For example, both Religious Meal Forms state that "You are requesting permission to participate in a religious meal for your registered religion of record." (Dkt. No. 53-1, at CM/ECF pp. 58, 91). At the bottom of the form, the inmate is instructed to confirm that "I have read and understand the requirements for participation in the Religious Diet/Menu program. I would like to participate as indicated by checking the appropriate line below." (*Id*.) The first option allows registration for either the Kosher Diet or the Cold Alternative Diet, depending on the form. (*Id*.) The second option, on both versions of the form, is for

> ALL other Department approved religious diets/menus that are available for my religion of record. I have notified the Coordinating Chaplain or their designee of my desire to participate in accordance with local facility

policies.  Since I have requested this menu/diet, if I fail to comply with the terms, I may be subject to removal.

(*Id*.) (emphasis in original).

Citing plaintiff's refusal to sign the Religious Meal Form, defendant Wilder decided that plaintiff could not attend the Eid-Ul-Adha festival. (Wilder Decl. ¶¶ 2-3). On the day of the festival, plaintiff attempted to attend, but was refused entry because he had not signed the Religious Meal Form. (Dkt. No. 53-2 at CM/ECF p. 9, "LaClair Decl.," Ex A; Dep. at 31).

## B.    Ramadan 2015

At the end of 2014, defendant Qusay Qubaisy, an Imam, became the Muslim Chaplain at Franklin. (Dkt. No. 53-4, "Qubaisy Decl." ¶ 1).  He held that position until November 10, 2016, when he was reassigned to a different facility. (*Id*.)  In 2015, the Muslim holy month of Ramadan commenced on June 18, 2015. (Dkt. No. 53-1, at CM/ECF p. 5, Qubaisy Decl., Ex. A).  Beginning on or about January 2015, defendant Qubaisy made regular announcements at Franklin that all Muslim inmates interested in participating in Ramadan activities had to sign up by May 4, 2015.  (Quabaisy Decl. ¶ 4).  This announcement was consistent with a DOCCS policy requiring 45 days notice to allow for adequate preparation of group religious activities, as outlined in a January 14, 2015 memorandum that was allegedly posted in each housing unit at Franklin. (LaClair Decl. ¶ 12).  Plaintiff denies that the memorandum was ever posted in his housing unit, but does not dispute that he was aware of defendant Qubaisy's announcement. (Dkt. No. 59, "Pl.'s Statement of Material Facts" ¶ 43-47).

5

On June 15, 2015, plaintiff submitted a letter to defendant Qubaisy, asking to be placed on the list of Ramadan participants. (Qubaisy Decl. ¶ 4; Dep. at 70). That same day, defendant Wilder denied plaintiff's request to participate in Ramadan, because he had missed the May 4, 2015 registration deadline. (Dep. at 70; Dkt. No. 53-1 at CM/ECF p. 36).

### C.    Ramadan 2016

On March 26, 2016, plaintiff signed a Religious Meal Form, and initialed the section confirming his request to participate in "All other Department approved religious diets/menus that are available for my religion of record." (Dkt. No. 1-1, at CM/ECF p. 41; Dkt No. 53-1. at CM/ECF p. 58). This same section warns that an inmate who fails to comply with the applicable requirements may be removed from participation. (*Id*.) Plaintiff also made a timely request to participate in Ramadan activities.[3]

In 2016, the holy month of Ramadan began on June 6. (Dkt. No. 1-1, at CM/ECF p. 49; Dkt. No. 53-1, at CM/ECF p. 66). Plaintiff attended group activities for the first ten days of Ramadan, but testified that some other inmates did not take the holy month seriously, and they distracted from what was "supposed to be a religious atmosphere." (Dep. at 116). He chose to stay in his housing unit, and he did not participate in the Ramadan meals on several days. (*Id*.) Instead, plaintiff fasted on his own, and prepared his own meals. (Dep. at 116-17). After plaintiff missed the group meal on June 16,

---

[3] Plaintiff testified that he notified defendant Qubaisy to add his name to the list of Ramadan participants. (Dep. at 110).

2016, he was called to defendant Wilder's office for counseling. (Dep. at 117). Defendant Wilder reminded plaintiff of his obligation to attend and the potential consequences of not attending the meals. (Wilder Decl. at 7). He was also advised that if he missed a religious meal "through no fault of [his] own," he should "submit a written notice to the Food Service Administrator and the Coordinating Chaplain immediately outlining the reason the meal(s) was missed." (Dkt. No. 53-7, at CM/ECF p. 37, Wilder Decl., Ex. G). Plaintiff refused to sign the form acknowledging that he had received this counseling. (Dep. at 118).

Plaintiff also missed Ramadan meals held between June 19 and 22, 2016. (Dep. at 116). Each missed meal subjected plaintiff to an increasing scale of penalties, which ultimately resulted in "removal" from religious meals for sixty days as of June 28, 2016. (Dkt. No. 53-7, at CM/ECF p. 39; Wilder Decl., Ex. H). Defendant Wilder prepared a memorandum advising plaintiff of this removal, which also advised that "[t]his does not remove you from participation in Ramadan, but excludes you from receiving the Ramadan Meal." (*Id.*) This removal prevented plaintiff from receiving Ramadan meals for the remainder of the holy month. He was permitted to reapply for permission on August 26, 2016, but did not do so. (Dep. at 123). He was subsequently transferred to other DOCCS facilities, before being released from DOCCS custody on January 9, 2018. (Dkt. Nos. 46, 52, 68).

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III.    <u>Exhaustion of Administrative Remedies</u>

### A.    <u>Legal Standards</u>

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse

decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id*. § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v.*

10

*Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

## B.    Application

The parties agree that plaintiff exhausted his administrative remedies with respect to the Eid-Ul-Adha Festival in 2014, and the observance of Ramadan in 2015. (Def. Statement of Material Facts ¶¶ 27-42, 62-70; Pl.'s Statement of Material Facts ¶¶ 27-42, 62-70). Plaintiff concedes that he did not file a grievance related to Ramadan 2016, but argues that no grievance was necessary, or would be futile, because he had already raised concerns about the Religious Meal Form in his 2014 and 2015 grievances. (Pl.'s Statement of Material Facts ¶ 83; Dep. at 130) This court finds plaintiff's argument unpersuasive, and recommends that defendants be granted summary judgment as to plaintiff's claims arising from the alleged unconstitutional interference with his observance of Ramadan 2016.

The Second Circuit has held that an earlier grievance may be sufficient to

exhaust an inmate's administrative remedies with respect to the continuing

infringement of his rights, but that exception "is necessarily limited to cases in which a

prior grievance identifies a specific and continuing complaint that ultimately becomes

the basis for a lawsuit." *Johnson v. Killian*, 680 F.3d 234, 239 (2d Cir. 2012).  In

*Johnson*, the Second Circuit held that an inmate plaintiff had exhausted his

administrative remedies when he filed, and exhausted, a grievance in 2005 challenging

the facility's prayer policies.  *Id.* at 236-237.  After the grievance was filed, the facility

ceased enforcing the relevant policy. *Id.* at 237.  In 2007, a new warden was appointed,

and the challenged policy was reimplemented and consistently enforced. *Id.* The

*Johnson* plaintiff filed a complaint without exhausting his administrative remedies

regarding the re-implementation of the challenged policy.  *Id.*  The Second Circuit held

that plaintiff sufficiently complied with the exhaustion requirement by challenging the

identical policy in 2005, notwithstanding a "different set of circumstances" in 2007. *Id.*

at 238-39.  The court held that "the issue that Johnson would have raised in 2007 – the

inadequacy of the spaces and times allotted for congregational prayer – was *identical* to

the issue he exhausted in 2005."  *Id.* at 239.

In this case, plaintiff filed a 2014 grievance claiming that the Religious Meal

Form was an unconstitutional procedural requirement for his attendance at the Eid-Ul-

Adha festival. (Dkt. No. 53-1, at CM/ECF pp. 80-85).  In 2015, he filed a grievance

regarding the registration deadline for Ramadan, and expressed his belief that he was

being penalized for refusing to sign the Religious Meal Form. (Dkt. No. 53-1, at

CM/ECF p. 113).  In 2016, he signed the Religious Meal Form, but was penalized when

he stopped attending group Ramadan meals and refused to take part in counseling.
(Dkt. No. 53-7, at CM/ECF p. 39; Wilder Decl., Ex. H)  Although hypothetical
enforcement concerns may have been part of plaintiff's motivation at the time that he
filed his 2014 and 2015 grievances, he has not demonstrated that the issues raised are
identical with the claims that arose in 2016.  *See White v. Velie*, 709 Fed. App'x 35, 36
(2d Cir. 2017) (plaintiff's contention that he had previously filed "similar" grievances
did not excuse his failure to exhaust).  Therefore, plaintiff does not qualify for the
narrow exception described in *Johnson*, and failed to exhaust his administrative
remedies.  Accordingly, this court recommends that defendants' motion for summary
judgment be granted as to all of plaintiff's claims related to Ramadan 2016.

## IV.   Personal Involvement

### A.   Legal Standard

Personal involvement is a prerequisite to the assessment of damages in a section
1983 case, and respondeat superior is an inappropriate theory of liability.  *Richardson
v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-
24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant
can be personally involved in a constitutional deprivation, and thus be subject to
individual liability.

A supervisory official is personally involved if that official directly participated
in the infraction.  *Id.*  The defendant may have been personally involved if, after
learning of a violation through a report or appeal, he or she failed to remedy the wrong.
*Id.*  Personal involvement may also exist if the official created a policy or custom under

which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).

### B.    Application

Defendants have argued that most of the named defendants lack personal involvement with either of plaintiff's two remaining claims, related to the Eid-Ul-Adha festival in 2014 and the observance of Ramadan in 2015. This court will address each of those claims separately.

### 1.    Eid-Ul-Adha Festival in 2014

Both parties agree that defendant Wilder made the determinations that plaintiff

was prohibited from attending the Eid-Ul-Adha festival in 2014. (Def. Statement of Material Facts ¶ 23; Pl.'s Statement of Material Facts ¶ 23). The parties also agree that defendant Quabaisy was not employed at Franklin in October 2014, when the Eid-Ul-Adha festival took place, and therefore had no personal involvement in the alleged constitutional violations. (Quabaisy Decl. ¶ 2; Dep. at 140). In his response to defendants' motion, plaintiff also apparently concedes that many of the remaining defendants lacked personal involvement with the 2014 determination, stating:

> Plaintiff never stated anywhere in plaintiff's claims that defendants Max Patnode, Deputy Superintendent of Programs, Ronald Foster, Deputy Sup. of Security, Jamie Pellerin[4], Food Administer [sic], Acting Commissioner Anthony J. Annucci, Imam Quibasy, and Chaplin [sic] Stephen Smith had any involvement in not allowing plaintiff to attend the Eid-Ul-Adha festival that was held on 10-18-14.

(Pl.'s Statement of Material Facts ¶ 25).

In his contemporaneously filed responsive memorandum of law, plaintiff narrows this concession. He agrees that defendants Foster and Annucci should be dismissed from the matter, even though they may have been "aware of the situation." (Dkt. No. 59-1, "Pl.'s Br." at CM/ECF p. 35). However, plaintiff argues that the remaining defendants had adequate personal involvement in the 2014 determination. (*Id.* at CM/ECF pp. 35-38). Plaintiff described defendant Patnode as the "defendant who has the final say over everything related to the plaintiff's claims . . ." (*Id.* at CM/ECF p. 37). He also described defendant Pellerin as "the record keeper" who was involved in

---

[4] Defendant Pellerin is identified in the docket as "J. Stearns," which was her last name in 2014 and 2015. (Dkt. No. 53-6, Pellerin Decl. ¶ 2).

"behind the scene" paperwork related to religious meals, and alleges that defendant Smith had adequate personal involvement because he was the first chaplain to request that plaintiff sign the Religious Meal Form. (Dep. at 142; Pl.'s Br. at CM/ECF p. 36). Plaintiff's claim against defendant LaClair is based upon his denial of the October 2014 grievance. (Dep. at 136-37).

Personal involvement requires that the individual who is, or becomes, aware of the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk*, 859 F. Supp. 2d at 441-42 (personal involvement requires knowledge and the ability to take action). Plaintiff has alleged that defendants Patnode had a supervisory role and should have been aware of the alleged First Amendment violations, but "mere linkage in the prison chain of command" is insufficient to impose § 1983 liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Likewise, defendant LaClair's denial of plaintiff's grievance after an investigation, without more, does not give rise to § 1983 liability. See *McClenton v. Menifee*, No. 05 Civ. 2844, 2006 WL 2474872, at *10 (S.D.N.Y. Aug. 22, 2006) ("a supervisor's mere denial of a grievance is insufficient to establish personal involvement; otherwise, senior administrative officials could generally be named as defendants in prison condition cases").

Plaintiff's allegations do not suggest that defendant Pellerin, who coordinated food orders for religious meals, had any role in determining which inmates were eligible to attend those meals. (Pellerin Decl. ¶ 3). Likewise, plaintiff has not alleged that defendant Smith, who provided plaintiff with the Religious Meal Form at defendant Wilder's request, had any role in the decision on whether plaintiff could

16

attend the Eid-Ul-Adha festival. (Smith Decl. ¶¶ 2-3).

Based upon this court's review of the record, plaintiff has adequately alleged personal involvement of defendant Wilder in the 2014 determination. This court recommends that all claims arising from the 2014 Eid-Ul-Adha festival against defendants Annucci, LaClair, Patnode, Qubaisy, Foster, Pellerin (formerly Stearns), and Smith should be dismissed, for lack of personal involvement.

### 2.    Ramadan 2015

Plaintiff's claims related to Ramadan 2015 confront a similar lack of personal involvement for most of the defendants. Again, both parties agree that defendant Wilder determined that plaintiff could not participate in Ramadan, because plaintiff had failed to meet the registration deadline. (Def. Statement of Material Facts ¶ 50; Pl.'s Statement of Material Facts ¶ 50). Defendants have not disputed that defendant Qubaisy, who prepared a memorandum advising inmates of the registration requirement and made regular announcements regarding the deadline for Ramadan participation, was involved in the implementation of the policy. (Qubaisy Decl. ¶ 4-5).

As with his prior claim, Plaintiff concedes in his response to this motion that certain defendants played only a supervisory or limited role in the 2015 events:

> Plaintiff never stated anywhere in any of plaintiff's claims that Max Patnode, Deputy Superintendent of Programs, Ronald Foster, Deputy Sup. of Security, Jamie Pellerin, Food Service Administrator, or Acting Commissioner Anthony J. Annucci and Chaplain Stephen Smith denied plaintiff the right to attend the Ramadan Services or put my name on the Ramadan List.

(Pl.'s Statement of Material Facts ¶ 52).

Again, plaintiff retreated from this broad concession in his memorandum of law, but his arguments regarding the 2015 Ramadan observance suffer from similar defects as those related to his 2014 claims.  Plaintiff has only alleged respondeat superior liability for defendants Annucci, Foster, Patnode, and LeClair. (Pl.'s Br. at CM/ECF pp. 35-38).  Plaintiff has not alleged any actions by defendant Smith with regard to his exclusion from Ramadan in 2015, and only asserts a "record-keeping role" by defendant Pellerin (Pl.'s Br. at 36).  As described above, these allegations are insufficient to support a § 1983 claim against those defendants.  Therefore, this court recommends that defendants Annucci, Foster, Patnode, LeClair, Pellerin (formerly Stearns), and Smith be granted summary judgment as to plaintiff's 2015 Ramadan claims.  Plaintiff has alleged sufficient personal involvement by defendants Wilder and Qubaisy for the court to consider the substance of the claims against those defendants.

## V.    **First Amendment Claims**[5]

### A.    **Legal Standards**

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  However this right is not limitless, and

---

[5] Plaintiff briefly referenced Eighth Amendment deliberate indifference and Fourteenth Amendment due process claims in his complaint. (Compl. at 11).  At his deposition, plaintiff testified that his Eighth Amendment claim arose "when they denied me the right to participate in my festival, of 2014 and they denied me the right to participate in the whole Ramadan of 2015." (Dep. at 145).  He also testified that "[t]he due process right is to participate in . . . my festivals, without the stress that they put me through." (Dep. at 146).  These are duplicative of his religious exercise claims.  Therefore, this court will address only plaintiff's First Amendment and RLUIPA claims in this report.  To the extent that plaintiff has alluded to any other constitutional or statutory claims, this court recommends dismissal of those claims.

may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safley*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord*, 758 F.3d 215, 220-22 (2d Cir. 2014). In *Holland*, the court discussed the degree of burden required for a First Amendment claim. *Id.* at 220-21. The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed

19

conduct "substantially burdens his sincerely held religious beliefs." *Id.* (citing *Salahuddin, supra* at 274-75; *Ford*, *supra* at 592 (where the court assumed without deciding that the substantial burden test applies)).  The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly.[6]  *Id.*  This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid.  *See also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (discussing the unsettled status of the substantial burden test).

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests.  *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y.  March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274).  Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

---

[6] This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal.  *Holland*, 758 F.3d at 221.

**B.    Application**

**1.    Eid-Ul-Adha Festival in 2014**

For purposes of this motion only, defendants have not disputed that plaintiff has a sincerely held religious belief in his Islamic faith, and in the observance of religious holidays. (Dkt. No. 53-11, Def. Br. at CM/ECF p. 12).  Rather, defendants contend that the requirement that plaintiff sign a Religious Meal Form prior to participating in the Eid-Ul-Adha festival was not a substantial burden on his religion. Defendants note that plaintiff was able to pray on his own even though he was excluded from the festival. (Wilder Decl. ¶ 2; Dep. at 69).

This court agrees with defendants that the Religious Meal Form did not impose a substantial burden on plaintiff's religion, even if Franklin officials had previously not required inmates to sign the form to attend previous religious festivals.  Construing all of plaintiff's submissions liberally and drawing all reasonable inferences in plaintiff's favor, plaintiff has alleged that he was excluded from the festival solely because he refused to sign the Religious Meal Form.   In short, plaintiff's refusal to register for meals associated with his religious faith resulted in his exclusion.

 The Second Circuit has held that similar registration requirements before an inmate is eligible to fully practice their religious faith "entail[] only a modest act of commitment . . . ." *See Jackson Bey v. Hansimaier*, 115 F.3d 1091, 1096-97 (2d Cir. 1997).  Plaintiff's contention that the limited references on the Religious Meal Form to a Kosher meal or the Cold Alternative Diet force him to agree to meal restrictions that violate his religion are unfounded.  Although the Religious Meal Form is not a model

of clarity[7], it only requires an inmate to register "to participate in a religious meal for your registered religion of record." Indeed, plaintiff has not alleged any facts that would suggest that he was forced to alter or abandon his religious affiliation or practices as a result of the form. The Religious Meal Form "is, at best, an inconvenience, but does not rise to the level of a burden" on plaintiff's First Amendment rights. *See Spavone v. City of New York*, 420 F. Supp. 2d 236, 240 (S.D.N.Y. 2005) (plaintiff was not substantially burdened by policy that permitted inmates to only participate in one religion); *see also Jones v. Annucci*, No. 16-CV-3516 (KMK), 2018 WL 910594 (S.D.N.Y. February 14, 2018) (plaintiff's First Amendment rights were not substantially burdened when Muslim inmate was required to register as "Shia" in order to attend certain religious festivals).

Plaintiff's exclusion from the religious festival was a result of his own decision not to sign the Religious Meal Form, rather than an arbitrary decision by defendant Wilder. *See Jean Laurent v. Los*, No. 12-CV-132S(F), 2015 WL 1045383, at *7 (W.D.N.Y. March 9, 2015) (finding no substantial burden when inmate was not allowed to re-enter Ramadan service after voluntarily leaving to visit prison law library). Therefore, this court recommends that defendant Wilder be granted summary judgment as to plaintiff's First Amendment claim that plaintiff's exclusion from the Eid-Ul-Adha festival for refusing to sign the Religious Meal Form violated his First Amendment rights.

---

[7] In its October 28, 2014 denial of plaintiff's grievance, the IGRC recommended that the Religious Meal Form be revised to clarify the distinction between religious meals and the daily CAD diet. (Dkt. No. 53-1, at 87).

Even if plaintiff had demonstrated a substantial burden, summary judgment in favor of defendants would still be appropriate.  Registration requirements such as the Religious Meal Form have a valid penological purpose.  In upholding the requirement that an inmate formally declare his religious affiliation, the Second Circuit explained:

> Registration eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at different times.  Registration also allows prison officials to gauge the interest in any particular religion on the part of the inmate population and thus decide whether a "congregation" should be allowed.  Registration puts the institution on notice that certain religious accommodations will likely be sought and thereby provides the institution with time to consider if and how to implement them. This, in turn, makes such accommodations more likely and thereby reduces the circumstances in which judicial intervention will be needed. In short, registration places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial "bright line" that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly.

*Jackson Bey*, 115 F.3d at 1097.

Defendants have offered a similar justification in this case.  Defendant Wilder justified the need for the Religious Meal Form as a means "to confirm the number of participants in the meal portion of any holiday, holy day, event, or festival, which is necessary to confirm the proper amount of food is ordered and prepared." (Wilder Decl. ¶ 4).  Defendant Pellerin, the Food Service Administrator at Franklin, explained that she relied upon the list of participants "to order and/or prepare the number of meals for any particular special event, holy day, celebration or religious holiday for any faith, as applicable." (Pellerin Decl. ¶ 4).  Plaintiff has not demonstrated that these justifications

23

are irrational.  Therefore, even if plaintiff had shown that the Religious Meal Form imposed a substantial burden, summary judgment for defendant Wilder would still be appropriate.

### 2.    Ramadan 2015

DOCCS policy states that "Chaplains shall notify each religious community of upcoming celebrations along with a deadline to sign up to participate." (LaClair Decl. ¶ 12; LaClair Decl., Ex. B).  In accordance with that policy, defendant Qubaisy notified inmates interested in participating in Ramadan that they must register no later than 45 days in advance of the holy month. (Qubaisy Decl. ¶ 4).  Therefore, inmate requests to participate in Ramadan had to be submitted by May 4, 2015. (*Id*.)  Plaintiff contends that he sent a letter to defendant Qubaisy on May 7, 2015, and again on June 15, 2015, requesting to participate in Ramadan services. (Compl. at CM/ECF pp. 5-6; Dep. at 74). Both of these requests came after the deadline had expired.

The "modest act of commitment" imposed by the forty-five day registration period does not rise to the level of a substantial burden on plaintiff's free exercise of his religion. *See Jackson Bey*, 115 F.3d at 1096.  Plaintiff has not alleged that defendants Wilder or Qubaisy prevented him from submitting a timely request to attend.  Instead, he argues that the 45 day deadline did not apply to the Muslim faith, and that Muslim inmates only had to register "for Ramadan about two to three weeks before Ramadan starts." (Pl.'s Statement of Material Facts ¶ 43).  These assertions are contradicted by the record.  Plaintiff also asserts that defendant Wilder only prohibited him from participating in Ramadan 2015 because plaintiff had refused to sign the Religious Meal

24

Form.  He offers no support for this assertion.

Even if enforcement of the established forty-five day deadline imposed a substantial burden on plaintiff's religious exercise rights, summary judgment would be appropriate.  *See Rush v. Malin*, No. 15-CV-3103, 2017 WL 2817080, at *3 (S.D.N.Y. June 29, 2017) (requirement that request to hold religious event be submitted forty-five days prior to event was reasonably related to legitimate penological interests, and did not violate the constitution).  Defendants have offered a variety of valid penological interests for imposing the forty-five day registration requirement.  The advance notice generally allows the facility to designate sufficient space for events, to ascertain the correct number of security personnel to be present, and, when applicable, to determine the amount of food to be ordered and prepared.  Wilder Decl. ¶ 9; Qubaisy Decl. ¶ 4; Pellerin Decl. ¶ 7).  The record shows that Franklin officials must coordinate a wide variety of different religious celebrations throughout the calendar year, with varying logistical requirements.  (Dkt. No. 53-1, at CM/ECF pp. 94, 116-117).  In the case of Ramadan, the advance notice allows the facility to prepare and deliver the correct number of pre-dawn Sahoor meal bags for Muslim inmates who are breaking their daily fast. (Wilder Decl. ¶ 9; Pellerin Decl. ¶ 7).  Plaintiff's speculative conclusion that the advance notice is not actually necessary for Ramadan is unsupported by the record. (Dep. at 98).  Therefore, this court recommends that defendants Wilder and Qubaisy be granted summary judgment as to plaintiff's First Amendment claim that plaintiff's exclusion from Ramadan 2015 violated his First Amendment rights.

## VI.    Religious Land Use and Institutionalized Persons Act

### A.    Legal Standard

RLUIPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

> (A) is in furtherance of a compelling governmental interest; and

> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial.[8] *Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. § 2000cc-2(b)).  The burden then shifts to the government to show that the burden furthers a compelling governmental interest **and** that it is the ***least restrictive*** means of achieving that interest. *Id.*  The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).  Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing

---

[8] RLUIPA uses the term "substantial burden" in the language of the statute, removing any ambiguity with respect to the extent of the burden required to establish a statutory claim.

*Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)).  Furthermore, the substantial burden test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'").  However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

### B.    Application

To the extent that plaintiff asserts RLUIPA claims against defendants Wilder or Qubaisy in either their individual or official capacities, the claims should also be dismissed.  Plaintiff only seeks monetary relief in his complaint. (Dkt. No. 1, at CM/ECF p. 11).  RLUIPA does not authorize claims for money damages against state officers in either their individual or official capacities. *Holland*, 758 F.3d at 224. Even if plaintiff had sought injunctive relief against the defendants in their official capacities, plaintiff is no longer incarcerated at Franklin, and is currently released on parole. (Dkt. No. 46, 52, 68).  His transfer to another facility mooted claims for declaratory or injunctive relief against Franklin officials. *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *see also Wright v. New York State DOCCS,* 568 F. App'x 53, 55 (2d Cir. 2014); *Wood v. Captain Colon*, No. 3:13-CV-1467, 2016 WL 2930882, at *3 (D. Conn. May

18, 2016). Further, because plaintiff is no longer incarcerated, any injunctive relief related to broader DOCCS policy would also be moot. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 499 (S.D.N.Y. 2008) ("[w]here a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot") (citations omitted). Thus, the entire complaint may be dismissed.[9]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 53) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     April 19, 2018

_____

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[9] Defendants also argued that summary judgment was appropriate on qualified immunity grounds. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because this court has found that the defendants have not violated the plaintiff's rights in the first instance, it need not reach the issue of whether a reasonable person would have known of the violation.